# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

_____
                                              :
OLGA SHAH,                                    :
                                              :   Civil No. 12-4648 (RBK/KMW)
                       Plaintiff,             :
                                              :
        v.                                    :   **OPINION**
                                              :
                                              :
ASHOK SHAH,                                   :
                                              :
                                              :
                       Defendant.             :
_____               :

**KUGLER**, United States District Judge:

Before the Court is the motion of Defendant Ashok Shah ("Defendant") for summary judgment. For the reasons set forth below, Defendant's motion will be **DENIED**.

## I.      BACKGROUND AND PROCEDURAL HISTORY

This matter arises out of the attempt of pro se Plaintiff Olga Shah ("Plaintiff") to enforce a United States Citizenship and Immigration Services Affidavit of Support, Form I-864 ("I-864"), against her former husband, Ashok Shah. When he signed the I-864, Defendant promised to provide sufficient support to maintain Plaintiff at an income of no less than 125% of the Federal Poverty Guidelines. Def. Mot. Summ. J. Ex. B. Plaintiff seeks to enforce the I-864 retroactively to September 15, 2011, the date when Defendant allegedly abandoned her and terminated financial support.[1] Many of the facts surrounding the brief marriage of the parties in

---

[1] The September 15, 2011 date is taken from the complaint. Compl. at p.2. In her opposition to this motion, however, Plaintiff has asserted that her former husband terminated support of her beginning in June, 2011. Pl. Opp'n at 2.

this case are sharply disputed. It appears that Defendant met Plaintiff in 2008 during a trip to her native city of Kazan, Russia. They stayed in touch by email after Defendant left Kazan, and spent two weeks together in April, 2009. Compl. at p.1. In January, 2010, Plaintiff obtained a fiancé visa, and married Defendant in April 2010. In order to obtain permanent residency for Plaintiff, Defendant signed the I-864 on August 13, 2010, and submitted it to the United States Government. Id., Ex. A.[2] Prior to the execution of the I-864, the parties also signed a prenuptial agreement on March 19, 2010, the terms of which evidently prevented Plaintiff from seeking alimony or other spousal maintenance, from making any claims against Defendant's estate in the event of his death, and from seeking other remedies in the event of a divorce. Id. Ex. F.

After the wedding, the parties experienced marital difficulties, and they evidently separated in June, 2011. Def. Mot. Summ. J. at 1. Divorce proceedings were subsequently initiated, and Plaintiff filed the instant action seeking enforcement of the I-864 in July 2012. Defendant filed a divorce complaint in New Jersey Superior Court in January 2013, and divorce was granted by the Superior Court of New Jersey on August 12, 2013. Pl. Opp'n Ex. A.

On October 28, 2013, this Court granted in part a motion filed by Plaintiff seeking summary judgment in this matter, and denied a cross-motion filed by Defendant. The Court found that no issue of material fact existed as to whether Defendant was liable for support under the I-864, and thus granted Plaintiff's motion as to liability. However, because of the existence of a number of disputed issues of fact with respect to some portion of Defendant's support obligation that he may have satisfied through past support, and other issues related to damages, the Court denied Plaintiff's motion as to damages. See ECF Doc. No. 43.

---

[2] Plaintiff's exhibits are not labeled. The Court designates the Form I-864 attached to Plaintiff's complaint (Docket No. 1) as Exhibit A. The six exhibits listed in Docket No. 9 as exhibits to the complaint will be designated as Exhibits B-G, in the order they appear in the document.

A day after the summary judgment Opinion and Order were filed, Defendant filed the instant motion for summary judgment.

## II. LEGAL STANDARD FOR SUMMARY JUDGMENT

A court should grant a motion for summary judgment when the moving party "shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "material" to the dispute if it could alter the outcome, and a dispute of a material fact is "genuine" if "a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushida Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'") (quoting First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 289 (1968)). In deciding whether there is any genuine issue for trial, the court is not to weigh evidence or decide issues of fact. Anderson, 477 U.S. at 248. Because fact and credibility determinations are for the jury, the non-moving party's evidence is to be believed and ambiguities construed in her favor. Id. at 255; Matsushida, 475 U.S. at 587. Although the movant bears the burden of demonstrating that there is no genuine issue of material fact, the non-movant likewise must present more than mere allegations or denials to successfully oppose summary judgment. Anderson, 477 U.S. at 256. The nonmoving party must at least present probative evidence from which the jury might return a verdict in his favor. Id. at 257. The movant is entitled to summary judgment where the non-moving party fails to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

## III. DISCUSSION

Defendant argues that he should be granted summary judgment because an award to Plaintiff would constitute impermissible review of a state court judgment. He also argues that the matter has already been litigated to resolution in state court, and that Plaintiff waived her right to pursue this claim when she signed her prenuptial agreement. All of Defendant's arguments fail.

**A. Review of a State Court's Decision**

Defendant argues that Plaintiff's claim is barred by the Rooker-Feldman doctrine because her claim is "inextricably intertwined" with adjudication of a state claim.[3] Def. Mot. Summ. J. at 2. The doctrine that Defendant attempts to invoke prevents "lower federal courts from exercising jurisdiction over a case that is the functional equivalent of an appeal from a state court judgment." Marran v. Marran, 376 F.3d 143, 149 (3d Cir. 2004) (internal citation omitted). "A claim is inextricably intertwined with the state court adjudication when federal relief can only be predicated upon a conviction that the state court was wrong." Id. at 150 (internal citation omitted).

An extensive discussion of the Rooker-Feldman doctrine is not appropriate because Defendant has not made any attempt to show how adjudication of his obligations under the I-864 is intertwined with any state court case. Nor has he explained why a finding that he is liable for support would be the equivalent of a finding that a state court was wrong about anything. Presumably, he is referring to the parties' divorce case in the Superior Court of New Jersey, although he does not even make that clear. Defendant has not demonstrated that the state court had anything to say about his obligations under the I-864, and therefore his argument that the Rooker-Feldman doctrine bars Plaintiff's claim lacks merit.

---

[3] Because the Rooker-Feldman doctrine implicates subject-matter jurisdiction, if it applied, the outcome would be dismissal, and not an entry of summary judgment in favor of Defendant. See Fed. R. Civ. P. 12(h)(3).

4

### B. Res Judicata and Collateral Estoppel

Defendant next claims that this matter has already been litigated and a final judgment was issued. He argues that a "final judgment on the merits" was issued in the divorce case between the parties that concluded in August, 2013. Def. Mot. Summ. J. at 3. Defendant cites nothing in the record to support his argument that the judge in the divorce case issued a final judgment on the merits as to the I-864. When a party moves for summary judgment, he must cite to evidence in the record. See Fed. R. Civ. P. 56(c)(1). The arguments of the parties made in briefs are not evidence. Versarge v. Twp of Clinton, 984 F.2d 1359, 1370 (3d Cir. 1993) (citing Bell v. United Princeton Properties, Inc., 884 F.2d 713, 720 (3d Cir. 1989)). Because Defendant has failed to demonstrate that Plaintiff's claim was litigated and decided by another court, the claim cannot be barred by res judicata, which applies when there has been a final judgment on the merits in a prior suit, and one of the parties attempts to litigate a subsequent suit between the same parties based upon the same cause of action. See Purter v. Heckler, 771 F.2d 682, 690 (3d Cir. 1985).[4] Defendant has also not made a showing that collateral estoppel applies, which refers to a "more narrow application of res judicata," that has the effect of "foreclosing relitigation of all matters that were actually and necessarily determined in a prior suit." Id. at 689 n.5.

### C. Waiver

Finally, Defendant argues that Plaintiff waived any right to enforce the I-864 by signing a prenuptial agreement. The prenuptial agreement states under the section entitled "Alimony" that Plaintiff "waives, releases and relinquishes any and all rights whatsoever, whether arising by

---

[4] The Court notes that although Defendant cited nothing in the record in support of his argument that a final judgment has already been issued by the state court, Plaintiff attached a copy of the state court divorce judgment to her Opposition brief. The Court observes that the final judgment of divorce provides for an equitable distribution to be paid by Defendant in the amount of $9,000. Pl. Opp'n Ex. A. It says nothing about any decision on the merits or otherwise as to Defendant's obligations under the I-864.

5

common or statutory law (present or future) of any jurisdiction to spousal alimony, maintenance, or other allowances incident to divorce or separation . . . ." Def. Mot. Summ. J. Ex. A. Defendant's argument fails for two reasons.

First, the prenuptial agreement does not purport to waive a claim to support under an I-864. Its provision of waiver is limited to claims that are "incident to divorce or separation." Id. The I-864 has nothing to do with divorce or separation, and it requires a sponsor to support a sponsored immigrant regardless of divorce or separation. See Shumye v. Felleke, 555 F. Supp. 2d 1020, 1024 (N.D. Cal. 2008).

Second, even if the parties' prenuptial agreement did purport to waive claims to support under the I-864, the I-864 is nevertheless enforceable. The immigration regulations set forth five circumstances that terminate a sponsor's support obligations, and a prenuptial agreement or other waiver by the sponsored immigrant does not terminate the obligation. 8 C.F.R. § 213a.2(e)(2).

As Defendant acknowledges, the I-864 is a contract between himself and the United States. Def. Mot. Summ. J. at 5. He cannot unilaterally absolve himself of his contractual obligation by entering into a prenuptial agreement with Plaintiff. Courts that have considered the issue have reached different results when presented with the question of whether a sponsor may rely on a premarital or prenuptial agreement to nullify his obligations under an I-864. See Erler v. Erler, Civ. No. 12-2793, 2013 WL 6139721, at *2 (N.D. Cal. Nov. 21, 2013) (finding that to allow parties to nullify support obligations by relying on premarital agreements would "undermine the [I-864] Affidavit's goal of preventing immigrants from becoming public burdens."); but see Blain v. Herrell, Civ. No. 10-72, 2010 WL 2900432, at *7-8 (D. Haw. July 21, 2010) (finding that "Plaintiff has waived his right to enforce the Form I864 by entering into the Pre-Marital Agreement. . . .").

6

In this case, the prenuptial agreement was executed prior to the I-864. Thus, Defendant asks the Court to find that the I-864 was void from the moment it was signed, at least with respect to Plaintiff's right to enforce it. Under the statute authorizing the I-864, the Government may not accept an I-864 and admit an alien on that basis unless the I-864 is "legally enforceable against the sponsor by the sponsored alien." 8 U.S.C. § 1183a(a)(1). Therefore, this Court finds that it would undermine the purpose of the statute to allow sponsors to present an I-864 to immigration authorities that can never be enforced by the sponsored alien due to a prenuptial agreement that is not disclosed to immigration authorities. Congress determined that for an I-864 to be valid at all, the sponsored alien must be able to enforce it at the time when it is submitted to the United States. For this reason, the Court rejects the suggestion by Defendant that Plaintiff never had the right to enforce the I-864 on the basis of a prior prenuptial agreement.

## IV. CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment is **DENIED**. An appropriate order shall enter.

Dated: 01/14/2014

/s/ Robert B. Kugler
ROBERT B. KUGLER
United States District Judge